CHICAGO & P. R. Co. and others *v.* THIRD NAT. BANK OF CHICAGO.

*(Circuit Court, N. D. Illinois.* February 15, 1886.)

RAILROAD — CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY — LIABILITY ON JUDGMENT AGAINST CHICAGO & PACIFIC RAILROAD COMPANY.
 Judgment obtained by the Third National Bank of Chicago *held* a lien on the Chicago & Pacific Railroad, leased to the Chicago, Milwaukee & St. Paul Railway Company, for which, under the terms of its lease, it was liable, and a decree passed, requiring it to pay into court, within 30 days, a sufficient sum to satisfy the demand of the bank.

In Equity.
*Edwin Walker,* for the railroad company.
*Lyman & Jackson* and *John H. Thompson,* for defendant.

GRESHAM, J. The Chicago & Pacific Railroad Company was organized in 1865, to build a railroad from Chicago to the Mississippi river. In the prosecution of its enterprise the company contracted debts amounting to over $2,000,000. To raise money to pay this indebtedness, and to complete and equip its road, the company, on the first day of October, 1872, executed a trust deed or mortgage, embracing its property of every character and description, to secure an issue of $3,000,000 bonds, $2,000,000 of which were sold or delivered to creditors as collateral security. Early in 1876, the company had built its road from Chicago to Byron, a distance of 89 miles. Suit

was commenced in this court in May, 1876, to foreclose the mortgage, and in May, 1879, the property and franchises were sold, subject to redemption, under a decree previously entered, to John I. Blair and others, for $916,100. On the second day of April, 1880, the company, with the approval of its stockholders, leased its railway and other property, including its franchises, to the Chicago, Milwaukee & St. Paul Railway Company for 999 years. In addition to the foregoing facts, the lease contained the following recitals:

"Whereas, certain other parties to whom the said party of the second part (the Chicago & Pacific) was so as aforesaid indebted, have prosecuted their several demands in the superior and circuit courts of Cook county and other courts of the state of Illinois, and have procured divers judgments thereon which now remain unpaid and unsatisfied of record, and are a lien upon the property of the said party of the first part, and other of said demands still remain unliquidated; and whereas, the said party of the second part, at the request of the said party of the first part, (the Chicago, Milwaukee & St. Paul Company,) now proposes to aid the party of the first part in procuring a sufficient sum of money to redeem said property from the aforesaid sale, and to protect said property from all the aforesaid valid judgment liens, and also to extend and construct the road of said party of the first part to the Mississippi river; also to secure all proper and necessary terminal facilities and depots and grounds along the line; also to relay that part of the road already constructed, with steel rails, and to fully equip said road with all necessary rolling stock, so as to make the entire line a first-class railroad in all respects,—the entire or aggregate cost of which is estimated at three millions of dollars, for which said sum the parties hereto, by their proper officers, propose to execute their joint and several bonds of one thousand dollars each, bearing date the second day of April, A. D. 1880, and becoming due and payable on the first day of January, A. D. 1910, bearing interest at six per cent. per annum, payable semi-annually, viz., on the first days of January and July of each year, at the office or agency of the party of the second part, in the city of New York, which said bonds are to be secured by a trust deed or mortgage, of even date with said bonds, of all the railroad franchises and other property of the party of the first part, to the Farmers' Loan & Trust Company, of the city of New York; and whereas, the said party of the second part, at the like request of the party of the first part, proposes to take up, pay, cancel, and satisfy all of said bonds at their maturity, and to meet, pay, and satisfy all the accruing interest on said bonds as the same shall become due and payable according to the tenor thereof, and forever save the said party of the first part harmless therefrom, and also to pay all taxes, charges, or assessments imposed or assessed, or which may be hereafter imposed or assessed, upon the property or premises of the party of the first part."

Concurrently with the execution of this lease, the two companies executed a joint trust deed upon all the property of the Chicago & Pacific Company to secure the payment of 3,000 $1,000 6 per cent. bonds, all of which, after being duly executed by both companies, the Milwaukee Company received. The receiver, who had been in possession since the foreclosure suit was commenced, was discharged on June 28, 1880, at which time the Milwaukee Company entered into possession of all the leased property, and has ever since continued in possession. This company redeemed the property from

the foreclosure sale, extended the road to the Mississippi river at Savannah, where it constructed a bridge across the river, secured all necessary terminal facilities, depots and grounds along the line, relaid the road between Chicago and Byron with steel rails, and fully equipped the road with necessary rolling stock, and has ever since operated it as part of its line between Chicago and Omaha, as a first-class railroad. It did not, however, keep that part of its agreement which required it to protect the leased property from all existing valid judgment liens. The money that was paid to redeem from the sale under the decree of foreclosure was accepted by the purchasers.

On the ninth of March, 1876, Horace A. W. Tabor recovered a judgment in this court against the Chicago & Pacific Company for $3,499.73, and on the third of April, 1882, the Third National Bank of Chicago recovered a judgment in the same court, against the same defendant and others, for $36,165.36; the latter judgment being for money lent to the last-named company before the execution of the lease. On June 25, 1881, the marshal sold the Chicago & Pacific road to Albert Keep for $4,822, on an execution to satisfy the Tabor judgment, and delivered to the purchaser a certificate of sale. Keep, who was president of the Chicago & Northwestern Railroad Company at the time of the purchase, sold and assigned this certificate to Alexander Mitchell, who then was and still is president of the Milwaukee Company. On the twenty-fifth of September, 1882, the Third National Bank, as a judgment creditor of the Chicago & Pacific Company paid to the marshal $5,304.20 to redeem from the last-named sale, and Mitchell accepted the money, and receipted for it. The bank was proceeding to enforce its supposed rights as a junior creditor, under the laws of Illinois, by a sale of the property, when this suit was commenced, in October, 1882, and the sale and further proceedings were temporarily enjoined on the authority of *Hammock* v. *Loan & Trust Co.*, 105 U. S. 77, which, it was assumed, held that the property and franchises of a railroad company could not be sold on an execution to satisfy a judgment at law. The bank filed its answer and cross-bill. After reciting the facts, the cross-bill prayed that the bank's judgment, and the amount paid to redeem from the sale under the Tabor judgment, be decreed to be a lien upon the property of the Chicago & Pacific Company; that the court take possession of all such property, operate it by a receiver, and, out of the earnings, pay the amount due the bank. Testimony was taken, and the case is now before the court on final hearing.

The Tabor judgment was taken in this court before the foreclosure suit was commenced, and it was a valid lien upon the property of the Chicago & Pacific Company, within the meaning of the lease, when that property was surrendered to the Milwaukee Company. It was necessary to redeem from the foreclosure sale, and thus get rid of the lien of the trust deed executed in 1872, and the decree foreclosing it, before executing the lease and the joint bonds, and the

trust deed to secure them. The Tabor judgment was a lien, second only to the lien of the foreclosed trust deed, and when that lien was discharged, as it certainly was, by the payment and acceptance of the redemption money, the Tabor judgment, so far as the pleadings and testimony show, stood as the first lien. The Milwaukee Company agreed to protect the leased property against all valid judgment liens. The Tabor judgment was such a lien, and the obligation to pay it was no less binding than the obligation to do the other things specified in the lease as part of the consideration for its execution. It is not material, therefore, whether the Milwaukee Company agreed to protect the leased property against the Tabor judgment or not, as that company could not hold and operate the property for its own benefit in disregard of the rights of Tabor or his assignee.

The bank commenced its suit against the Chicago & Pacific Company on February 19, 1880, before the execution of the lease and the last trust deed,—the property then being in the custody of the court,—and took its judgment on April 2, 1882, which was after the Milwaukee Company had taken possession under the lease. It follows that the latter company was not bound by its covenant to pay this judgment or the debt for which it was taken.

Being embarrassed and without credit, the Chicago & Pacific Company was authorized to dispose of its property, as it did in the above arrangement, for the purpose of having the Milwaukee Company do what it, the Chicago & Pacific Company, was unable to do; there being nothing in that arrangement, if fairly carried out, which could prejudice creditors. It was estimated that the bonds would enable the lessee company to redeem from the foreclosure sale, pay all existing judgment liens, complete the road to the Mississippi river, relay the portion already in operation, with steel rails, procure necessary terminal facilities, depot grounds, etc., and fully equip the entire line. The fund arising from the sale of the bonds was to be used for these, and no other, purposes. Any diversion of it, or any part of it, to other objects or purposes was not permitted by the contracts. The road was to be completed to the Mississippi river, not to and across the river.

If the entire proceeds of the bonds had been expended in accordance with the terms of the lease, the bank's debt for the money which it lent to the Chicago & Pacific Company could not be asserted, in law or equity, against the Milwaukee Company, or the leased property in its possession. The record shows, however, that the latter company did all that the terms of the lease obliged it to do, except paying the Tabor judgment, and still had in the treasury a sum sufficient to pay for constructing a bridge across the Mississippi river. The amount due the bank, including the Tabor judgment, should have been paid out of this surplus. The cost of the bridge is not shown by the record, but we may safely assume that it exceeded the bank's

demand. The Milwaukee Company contends that, as lessee, it was entitled absolutely to the entire issue of bonds, and that any surplus remaining, after making necessary expenditures in fulfillment of its contract, it could rightfully use in bridging the Mississippi, or in any other way for its own benefit. It is admitted that the proceeds of the bonds paid for building the bridge; and it is not shown that the Milwaukee Company expended the entire proceeds, or an amount equal thereto, in the manner and for the purposes specified in the lease.

Mr. Edwin Walker, the sole witness in the case, is president of the Chicago & Pacific Company, and general solicitor for the Milwaukee Company. He testified that the former company had no property but the leased property, which had greatly increased in value; that it was in receipt of no income or earnings; that no separate account of the earnings of the leased property had been kept; and that, while he did not know that he could furnish a statement of the precise manner in which the proceeds of the bonds had been expended, he knew the entire amount had been paid out in redeeming from the foreclosure sale, in completing the construction of the road to the Mississippi river, in bridging the river, and in purchasing rolling stock and terminal facilities.

The creditors of the Chicago & Pacific Company, whether holding judgment liens or not upon that company's property when the lease was executed, were entitled to payment out of any remnant of the fund which remained in the treasury of the Milwaukee Company.

A decree will be entered requiring the Milwaukee Company to pay into court, within 30 days, a sum sufficient to satisfy the bank's demand, including the Tabor judgment, and, failing to do so, the bank may move the court for the appointment of a receiver to take possession of the leased property, and operate it until the amount due the bank is paid out of the earnings, or for any other appropriate relief.